**Mahlon C. COVEY, Plaintiff,**

v.

**SURGIDEV CORPORATION, Defendant.**

**No. 5:92 CV 1136.**

United States District Court, N.D. Ohio, E.D.

March 16, 1993.

William L. Blake, Cleveland, OH, for plaintiff.

Stanley S. Keller, Joseph George Ritzler, Keller, Scully & Williams, Cleveland, OH, for defendant.

## ORDER

SAM H. BELL, District Judge.

### I. INTRODUCTION

The above-captioned matter was commenced with the filing of a complaint on the 9th of June, 1992. This court's subject matter jurisdiction is premised upon the diverse citizenship of the parties. In his complaint, plaintiff alleges that the defendant is a corporation which designs, manufactures and sells intraocular lenses, which are implanted into the eye. Plaintiff alleges that on the 24th of September, 1984, the plaintiff, under the care of one Doctor Bunin, had an anterior chamber intraocular lens, Model 10 (Leiske lens) implanted into his right eye. This lens, it is alleged, was designed, manufactured and sold by the defendant. Following implantation, plaintiff experienced decreased visual acuity, intense pain and deterioration of the eye structure. In 1991, it was recommended that Plaintiff have the lens removed, exchanged and undergo a corneal transplant. On the 21st of August, plaintiff underwent the recommended procedure. Plaintiff states that "[i]t was only within the last year that the Plaintiff knew, or reasonably could have known, that the defectiveness of the Defendant's product has caused or contributed to

his injuries." (Complaint at ¶ 11) Plaintiff alleges that as a result of the implantation of the defendant's product, he has suffered sight-threatening complications, has incurred and will continue to incur medical expenses, has endured additional medical procedures, has suffered mental anguish, has experienced loss of pleasure and pain and suffering. Plaintiff alleges that his injuries are permanent and to some extent progressive.

Plaintiff claims that the defendant is liable for the following reasons:

1) failure to properly test the Leiske lens;

2) sale and distribution of the lens with knowledge that it was improperly tested and that it may cause damage to the human eye;

3) failure to adequately warn the public that the lens "had not been clinically tested for the implantation in the human eye and that it may cause damage to the human eye";

4) failure to adequately warn of the lens' dangers after its sale and distribution in September of 1984;

5) failure to inspect and discover that its lens design was defective and not fit for human implantation;

6) knowing that its lens was improperly designed, not fit for human implantation and failure to warn the public of its dangers;

7) negligence and/or strict liability for failure to take the necessary precautions to insure that the lens was safe for human implantation;

8) designing, manufacturing, and selling a product which was unreasonably dangerous in normal use;

(Complaint at ¶ 14) Plaintiff seeks damages in excess of $50,000.00 and trial by jury.

Currently before the court is defendant's motion for summary judgment, docket # 20. The premise of the defendant's motion is that plaintiff's claims are preempted by federal law. The following opinion is devoted to that issue.

## II. STANDARD OF REVIEW

In reviewing a motion for summary judgment, a court must consider the pleadings, related documents, evidence, and all reasonable inferences in a manner most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979). Rule 56 provides, in relevant part, as follows:

(c) . . .

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

. . . . .

(e) . . .

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Three Supreme Court cases have provided guidance as to the nature of the respective burdens allocated under Rule 56. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The ultimate burden lies with the non-moving party to show the existence of a genuine issue of material fact. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial.'* Fed.Rule Civ.Proc. 56(e)." *Matsushita,* 475 U.S. at 586–587, 106 S.Ct. at

1356 (emphasis supplied). "In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The court in *Anderson* held that "the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff had had a full opportunity to conduct discovery." *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514.

On the other hand, the moving party's burden under Rule 56 is lighter.

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. But unlike the Court of Appeals, we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. On the contrary, Rule 56(c) ... suggests the absence of such a requirement.

*Celotex*, *supra*, 477 U.S. at 323, 106 S.Ct. at 2553 (emphasis supplied).

The Sixth Circuit Court of Appeals, in *Street v. J.C. Bradford and Co.*, 886 F.2d 1472 (6th Cir.1989) recently reviewed court decisions and commentary regarding the impact of *Anderson*, *Celotex*, and *Matsushita* on summary judgment practice. The court concluded that a "new era" in summary judgment practice has opened in the court system as a result of these opinions.

> Scholars and courts are in agreement that a "new era" in summary judgments dawned by virtue of the Court's opinions in these cases ... On the whole, these decisions reflect a salutary return to the origi-

nal purpose of summary judgments. Over the years, decisions requiring denial of summary judgment if there was even a suggestion of an issue of fact and tended to emasculate summary judgment as an effective procedural device.

*Street*, *supra*, at 1476.

The court enunciated the following "new era" principles, among others: as on federal directed verdict motions, the "scintilla" rule applies, *i.e.*, the respondent must adduce more than a scintilla of evidence to overcome the motion; the respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment"; the trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact. *Id.* at 1479–1480 (footnotes and citations omitted).

## III. LAW AND ANALYSIS

The court shall premise this analysis with a brief notation that there is, apparently, no issue of material fact for determination. The defendant has moved for summary judgment on the basis of federal preemption. The basis of such preemption is the federal regulatory scheme conceived by the Congress and the executive branch. The plaintiff has not disputed the propriety of the regulatory scheme in a legal or constitutional as opposed to an equitable sense. The plaintiff has also not disputed the defendant's contention that the product here is one subject to the regulatory scheme at issue. Thus, we shall proceed with determining what is essentially a pure question of law.

Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2. In its most recent discussion of this topic, the Supreme Court explained:

> [S]ince our decision in *M'Culloch v. Maryland*, 4 Wheat 316, 427, 4 L.Ed. 579 (1819), it has been settled that state law that conflicts with federal law is "without ef-

fect." *Maryland v. Louisiana*, 451 U.S. 725, 746, 68 L.Ed.2d 576 [2129], 101 S.Ct. 2114 [2129] (1981). Consideration of issues arising under the Supremacy Clause "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 91 L.Ed. 1447, 67 S.Ct. 1146 [1152] (1947) Accordingly, "the purpose of Congress is the ultimate touchstone" of preemption analysis. *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 55 L.Ed.2d 443, 98 S.Ct. 1185 [1190] (1978) (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103, 11 L.Ed.2d 179, 84 S.Ct. 219 [223] (1963)).

*Cipollone v. Liggett Group, Inc.*, —— U.S. ——, ———–——, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407, 422–23 (1992). An analysis of that intent may lead to a conclusion that the state scheme is expressly or impliedly preempted:

Congress' intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 51 L.Ed.2d 604, 97 S.Ct. 1305 [1309] (1977). In the absence of an express congressional command, state law is preempted if that law actually conflicts with federal law, *see Pacific Gas & Elec. Co. v. Energy Resources Conservation and Development Comm'n*, 461 U.S. 190, 204, 75 L.Ed.2d 752, 103 S.Ct. 1713 [1722] (1983), or if the federal law so thoroughly occupies a legislative field "as to make reasonable the inference that Congress left no room for the States to supplement it." *Fidelity Federal Savings & Loan Assn. v. De la Cuesta*, 458 U.S. 141, 153, 73 L.Ed.2d 664, 102 S.Ct. 3014 [3022] (1982) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. [218] at 230, 91 L.Ed. 1447, 67 S.Ct. 1146 [at 1152].

*Id. See also Michigan Consolidated Gas Co. v. Panhandle Eastern Pipe Line Co.*, 887 F.2d 1295, 1300 (6th Cir.1989), *cert. denied*, 494 U.S. 1079, 110 S.Ct. 1806, 108 L.Ed.2d 937 (1990) [hereinafter *"Panhandle"*].

In the case at bar, the defendant asserts that the plaintiff's claims are expressly preempted by the United States Code and are impliedly preempted by the expansive federal regulation of the device at issue here. While the former contention clearly possesses merit, the latter does not. When Congress has expressly provided for preemption, an implied preemption analysis is inappropriate. In *Cipollone*, the Justice Stevens, writing for the Court, held that:

When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a "reliable indicium of congressional intent with respect to state authority" ... "there is no need to infer congressional intent to preempt state laws from the substantive provisions" of the legislation.

*Cipollone*, —— U.S. at ——, 112 S.Ct. at 2618, 120 L.Ed.2d at 423 (quoting respectively *Malone v. White Motor Corp.*, 435 U.S. at 505, 98 S.Ct. at 1190; *California Federal Savings & Loan Assn. v. Guerra*, 479 U.S. 272, 282, 107 S.Ct. 683, 690, 93 L.Ed.2d 613 (1987)). *See also, Stamps v. Collagen Corporation*, 984 F.2d 1416 (5th Cir.1993) (so holding). Our own Circuit Court has made similar expressions. *Panhandle*, 887 F.2d at 1300.

The basis of the defendant's motion is the 1976 Medical Device Amendments of the Food Drug and Cosmetics Act of 1938. The Amendments give the Food and Drug Administration regulatory authority over medical devices and authorize the agency to promulgate implementing regulations. 21 U.S.C. § 371(a) Part and parcel of those Amendments is Section 360k(a) of Title 21, United States Code. That section provides, in pertinent part, the following:

[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or any other mat-

ter included in a requirement applicable to the device under this chapter. 28 U.S.C. § 360k(a).[1] Because the Act expressly preempts some aspects of state law, and because it is a "reliable indicium" of Congressional intent, the preemption provisions of the Act, rather than the implied preemptive effect inferred from the substantive portions of the Act, guide our preemption inquiry. *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2617–18, 120 L.Ed.2d at 423.

Admittedly, Section 360k(a), as it relates to the device at issue here, has been the subject of few opinions in the federal courts. Nevertheless, parroting the words of the Section 360k(a), the few courts which have addressed this section have summarized the proper inquiry as follows:

> A state tort cause of action will be preempted if, in the context of a particular case, it (1) constitutes a requirement different from, or in addition to, any requirement the MDA makes applicable to the device at issue and (2) relates either to (a) the safety or effectiveness of the device or (b) any other matter included in a requirement made applicable to the device by the MDA.

*Stamps v. Collagen Corp.,* 984 F.2d 1416, 1421 (5th Cir.1993). *See also King v. Collagen Corp.,* 983 F.2d 1130, 1133 (1st Cir.1993); 21 C.F.R. 808.1(d) (regulatory provision imposing virtually identical test)

■ With this test established, we must now ask whether the plaintiff's claims constitute "requirements" for the purposes of Section 360k(a). Contrary to plaintiff's contention, the court believes it is well-settled that legal actions brought pursuant to state law and resulting verdicts are indeed a form of state regulation or, more specifically, constitute state-imposed requirements for the purposes of Section 360k(a). A great majority of the courts analyzing Section 360k(a) have come to this conclusion. *See, e.g., Slater v.*

*Optical Radiation Corp.,* 961 F.2d 1330 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992); *Stamps v. Versus Collagen Corp.,* 984 F.2d 1416 (5th Cir.1993); *King v. Collagen Corp.,* 983 F.2d 1130, 1134 (1st Cir.1993). *See also, Lindquist v. Tambrands, Inc.,* 721 F.Supp. 1058, 1062 (D.Minn.1989) ("of the eighteen courts that have considered [whether a state's general tort law standards are preempted by the MDA], seventeen have ... reached the conclusion that a jury verdict in a tort suit under state law is a requirement for the purposes of Section 521(a) and is therefore preempted.") As the Supreme Court noted long ago, "[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959). One court, recently addressing the preemptive effect of Section 360k(a) on tort claims involving intraocular lenses, commented: "[i]t is absurd to contend that this fear of liability will not induce manufacturers to conform their conduct to jury-set standard or that these standards do not, in reality, constitute new requirements which defendants must heed." *Hunsaker v. Surgidev Corp.,* 818 F.Supp. 744, 751 (M.D.Pa.1992) (Rambo, J.) This court must reach the same conclusion here.

■ The afore-mentioned reasoning, however, does not necessarily compel a conclusion that plaintiff's claims are preempted by the statute. Although a state-law tort judgment does constitute a requirement, that requirement (and hence the claim) is only preempted if it runs afoul of the provisions of Section 360k(a). In other words, the suit is preempted only if it adds to or diverges from any requirement the 1976 Amendments make

---

1. The FDA's regulations state that this "section prescribes a general rule that ... no State or political subdivision of a State may establish or continue in effect *any requirement* with respect to a medical device for human use having the force and effect of law (whether by statute, ordinance, regulation or *court decision*), which is different from, or in addition to any requirement applicable to such device under any provision of the act and which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under the act." Exemptions from Federal Preemption of State and Local Medical Device Requirements 21 C.F.R. § 808.1(b) (emphasis added).

applicable to the device at issue and it relates to either the safety or effectiveness of the device or any other matter included in a requirement made applicable to the device via the 1976 amendments.

 The Medical Device Amendments of 1976 authorize the Secretary of Health & Human Service to promulgate a regulatory scheme for the clinical investigation of experimental devices under an investigational device exemption. Such exemptions excuse a product from the requirement necessary for full commercial distribution. The purpose of such exemptions are "to encourage, to the extent consistent with the protection of the public health and safety and with ethical standards, the discovery and development of useful devices intended for human use and to that end to maintain optimum freedom for scientific investigators in their pursuit of that purpose." 21 U.S.C. § 360j(g)(1).

In the year following the enactment of the amendments, the FDA issued regulations providing for "Investigational Exemptions for Intraocular Lenses." 21 C.F.R. § 813.1 et. seq. It is undisputed that the lens at issue here is subject to this exemption and the regulations promulgated thereunder. As noted by Judge Posner,

> A detailed application is required, describing the device and setting forth a plan for studying its use in human subjects ("clinical investigation") during the experimental period. 21 C.F.R. § 813.20. The application must be reviewed by an institutional review committee as well as by the FDA before it can be approved. §§ 813.20, 813.30. After approval, the committee has a duty to monitor the clinical investigation. § 813.65. Congress expected the FDA to grant an investigational device exemption for intraocular lenses; we know this because the Medical Device Amendments contain a specific provision intended to require the FDA to make intraocular lenses "reasonably available to physicians meeting appropriate qualifications" if an investigational exemption is granted. 21 U.S.C. § 360j(1)(3)(D)(iii); H.R.Conf.Rep. No. 1090, 94th Cong., 2d Sess. 63 (1976); *American Society of Cataract & Refractive*

*Surgery v. Sullivan*, 772 F.Supp. 666, 673 (D.D.C.1991).

*Slater*, 961 F.2d at 1332. To say that the regulations covering intraocular lenses are expansive would be an understatement.

Although his complaint is less than a model of clarity, it seems clear that plaintiff's claim here is that the defendant is liable strictly and for negligence for its faulty design of lens, its failure to warn consumers, and its inadequate testing of the device. Such claims, which deal directly with the safety and effectiveness of the device, are clearly preempted because they would require practices different from those imposed under the regulations. A most compelling authority on this subject is, as one might expect, Judge Posner's opinion on this very matter. In that case, "[t]he complaint allege[d] inadequate testing, defective design of the intraocular lens, and failure to warn the public of the lens's dangers." *Slater*, 961 F.2d at 1332. The court found all such claims preempted. We reach the same conclusion here. The courts which have considered the claims advanced by plaintiff have overwhelming concluded that such claims are in fact preempted. Rather than needlessly recite their cogent reasoning, the court simply directs the reader to those case and adopts their reasoning in full. *See, e.g., Slater*, 961 F.2d at 1330; *Hunsaker v. Surgidev Corp.*, No. 1:CV–90–0919, slip op. (M.D.Pa. Dec. 14, 1992); *Hinners v. Optical Radiation Corp.*, No. 91–263–CIV–FTM–21D, slip op. (M.D.Fla. Oct. 10, 1992); *Rogers v. Optical Radiation Corp., Inc.*, No. GCA 91–10127–MMP, slip op. (N.D.Fla. July 31, 1992).

In reaching this conclusion, the court must note that plaintiff's predicament is one deserving much sympathy. Nevertheless, as Judge Posner noted, plaintiff is not left without remedies. Preemption:

> does not affect cases charging negligence in the implantation or removal of a lens, or complaining of contamination of the lens by bacteria or fungi or of failure to obtain the patient's informed consent to the procedure.

*Slater*, 961 F.2d at 1334. What preemption does affect is claims relating to the safety and effectiveness of the device itself. A

plaintiff receiving such a device is required to be given information concerning the risk involved in the procedure and the alternatives available. 21 C.F.R. § 50.25. The plaintiff should also be informed that the procedure is, itself, a research study. *Id.* By undergoing such a procedure, the plaintiff, in effect, becomes part of the clinical tests used to determine the adequacy of the device's design. As Judge Posner observed:

> The experimental procedure was riskier because, by definition, there was limited experience with it. Provided the risks ... were adequately explained to [plaintiff], he cannot complain that the risk materialized. [I]f experimental procedures are subject to hindsight evaluation by juries, so that failed experiments threaten to impose enormous liability on the experimenter, there will be fewer experimental treatments, and patients will suffer.
>
> . . . . .
>
> [Plaintiff's] complaint, variously expressed, is that the [lens] was too dangerous even for experimental use. That complaint is barred by the preemption provision of the Medical Devices Amendment.

*Slater*, 961 F.2d at 1333-34. The court must concur with this holding.

Accordingly, the defendant's motion for summary judgment, docket # 20, is GRANTED. This case is terminated in its entirety.

IT IS SO ORDERED.