Judy **CORRIGAN,**

v.

**METHODIST HOSPITAL and Sanford H. Davne, M.D. and Donald Myers, M.D.**

Civ. A. No. 94–1478.

United States District Court, E.D. Pennsylvania.

May 11, 1994.

Thomas W. Sheridan, Joseph L. Messa, Ominsky, Welsh & Steinberg, P.C., Philadelphia, PA, for plaintiff.

Nancy A. Nolan, Post & Schell, P.C., Philadelphia, PA, for defendant Methodist Hosp.

Kevin H. Wright, Amalia V. Romanowicz, Wright, Young & McGilvery, P.C., Plymouth Meeting, PA, for defendant Sanford H. Davne, M.D.

Daniel F. Ryan, III, Christine A. Egan, O'Brien & Ryan, Hickory Pointe, Plymouth Meeting, PA, for defendant Donald Myers, M.D.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

This medical malpractice action has been brought before the court on motion of the defendant, Sanford Davne, M.D. to dismiss the plaintiff's complaint against him. Pursuant to the rationale set forth in the paragraphs which follow, the motion is granted in part and denied in part.

### I. STATEMENT OF THE CASE.

According to the allegations contained in the complaint in this case, on July 9, 1991, the plaintiff, Judy Corrigan, first sought medical treatment of her back pain from the defendant doctors, Sanford Davne and Donald Myers. After several months of treatment for this condition, Drs. Davne and Myers purportedly represented to Ms. Corrigan that the only available option to improve her condition was surgery and, on March 5, 1992, Ms. Corrigan underwent a lumbar foramenotomy, L4–5 discectomy and posterior lateral lumbar fusion at Methodist Hospital. Following her discharge on March 14, 1992, the plaintiff continued to be followed by Drs. Davne and Myers, who prescribed various narcotic medications to relieve the continued intractable pain in her mid-back, low back and legs, muscle spasms and cramping. These symptoms apparently failed to abate and, in fact, grew worse with the passage of time. As a result, in October, 1992, Plaintiff consulted Doctors Mark Kotopka, John Esterhai and M.D. Cheatal at the Hospital of the University of Pennsylvania. On November 11, 1992, after several clinical examinations and tests, including an MRI, Drs. Kotopka, Esterhai and Cheatal diagnosed the plaintiff as suffering from a thoracic meningiomal tumor at the T6 level.

Plaintiff filed this lawsuit on March 4, 1994 alleging that the defendants had failed to obtain her informed consent for the lumbar fusion surgery in that they did not advise her that they planned to utilize the Acromed VSP plate and pedicle screw system in the surgery, that there was a risk of screw failure which, in turn could lead to an increase in pain, suffering and disability, that the use of that system was still considered investigational for use in lumbar fusion procedures or that the individual defendants had a financial interest in Acromed by virtue of the fact that they held stock options and served as members of Acromed's Medical Advisory Board. The complaint further alleges that the defendants were negligent in failing to appropriately diagnose and treat the plaintiff's meningiomal tumor and that the defendants engaged in a civil conspiracy to circumvent FDA restrictions on the marketing, labeling

and use of the Acromed VSP system with the result that the plaintiff was forced to suffer unnecessary surgery and pain.

By way of the instant motion to dismiss, the defendant Davne primarily asserts that the plaintiff's complaint cannot stand because the state law claims which she asserts therein have been pre-empted by the Medical Device Amendments to the Food, Drug and Cosmetic Act, 21 U.S.C. § 360c, *et seq.*[1] In addition, moving defendant argues that the complaint fails to state a claim for civil conspiracy under Pennsylvania law.

### II. *DISCUSSION.*

### A. *Legal Standards Applicable to Rule 12(b)(6) Motions.*

It has long been held that the appropriate vehicle for challenging the sufficiency of a pleading is through the filing of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). In evaluating the merits of such motions, the courts look first to the requirements for pleading cases prescribed by Fed.R.Civ.P. 8(a). That rule states:

A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

Subsections (e) and (f) of Rule 8 further provide, in relevant part:

**(e) Pleading to be Concise and Direct; Consistency.**

(1) Each averment of a pleading shall be simple, concise, and direct. No technical

forms of pleadings or motions are required.

. . . . .

**(f) Construction of Pleadings.**

All pleadings shall be so construed as to do substantial justice.

 Thus, it is well established that under the preceding flexible pleading requirements, a complaint must provide a defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Williams v. New Castle County,* 970 F.2d 1260, 1265–1266 (3rd Cir.1992) citing *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). In ruling upon a motion to dismiss for failure to state a claim upon which relief may be granted, the courts must primarily consider the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3rd Cir.1990). In considering such a motion, the court must accept as true all allegations in the pleadings and must give the plaintiff the benefit of every favorable inference that can be drawn from those allegations. *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3rd Cir.1991); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3rd Cir.1990). A complaint is properly dismissed only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3rd Cir.1988).

### B. *Applicability of the Pre-emption Doctrine to the Matter at Bar.*

 The concept of pre-emption has its origins in Article VI, Clause 2 of the United States Constitution, which states:

"This Constitution and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme

---

**1.** Insofar as the plaintiff is a citizen of the State of New Jersey and the defendants are citizens of the Commonwealth of Pennsylvania, jurisdiction in this action is premised upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

Ever since the United States Supreme Court issued its decision in *M'Culloch v. Maryland,* 17 U.S. 316, 4 Wheat. 316, 4 L.Ed. 579 (1819), it has been settled that state law that conflicts with federal law is "without effect." *Cipollone v. Liggett Group, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992), citing *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981). Whether or not a statute or law is invalid under the Supremacy Clause depends on the intent of Congress. *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 1189–1190, 55 L.Ed.2d 443 (1978).

■ Often, however, Congress does not clearly state in its legislation whether it intends to pre-empt state laws, and in such instances, the courts normally sustain local regulation of the same subject matter unless it conflicts with federal law or would frustrate the federal scheme or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the states. *Id.,* citing, *inter alia, Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 540–541, 97 S.Ct. 1305, 1309, 1316–1317, 51 L.Ed.2d 604 (1977). A conflict will be found where compliance with both federal and state regulations is a physical impossibility or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 158, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978). Accordingly, it has been said that pre-emption can be either express or implied and in analyzing whether a particular federal statute was intended to pre-empt a particular area of the law, a careful examination of the specific language of the statute in question is of paramount significance. *See: Cipollone v. Liggett,* —— U.S. at ——, 112 S.Ct. at 2620, ("We must give effect to this plain language unless there is *good reason to* believe Congress intended the language to have some more restrictive meaning," quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490

(1983).); *Stamps v. Collagen Corp.,* 984 F.2d 1416, 1420 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993). Likewise, when the language of the statute is such that Congress has expressly provided for pre-emption, an implied pre-emption analysis is unnecessary and inappropriate. *Covey v. Surgidev Corp.,* 815 F.Supp. 1089, 1093 (N.D.Ohio 1993).

In this case, Dr. Davne premises his pre-emption argument on the language contained in 21 U.S.C. § 360k. That section states:

**(a) General rule**

Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

**(b) Exempt requirements**

Upon application of a State or a political subdivision thereof, the Secretary may, by regulation promulgated after notice and opportunity for an oral hearing, exempt from subsection (a) of this section, under such conditions as may be prescribed in such regulation, a requirement of such State or political subdivision applicable to a device intended for human use if—

(1) the requirement is more stringent than a requirement under this chapter which would be applicable to the device if an exemption were not in effect under this subsection; or

(2) the requirement—

(A) is required by compelling local conditions, and

(B) compliance with the requirement would not cause the device to be in violation of any applicable requirement under this chapter.

Several District Courts as well as several Courts of Appeals have had occasion to consider the scope and pre-emptive effect of the

foregoing statute and it is upon those decisions which this defendant now relies. However, those courts which ruled in favor of pre-emption were confronted with what were essentially products liability, rather than medical malpractice, actions. Indeed, the plaintiffs in *Stamps v. Collagen Corp., supra, King v. Collagen Corp.,* 983 F.2d 1130 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993), *Slater v. Optical Radiation Corp.,* 961 F.2d 1330 (7th Cir.1992) and *Michael v. Shiley, Inc.,* 1994 WL 59349 (E.D.Pa. 2/25/94) all variously asserted state tort claims for personal injuries sustained from collagen treatments, an intraocular lens and a heart valve prosthesis respectively, under theories of strict liability, unfitness for intended purpose, breach of warranty, negligence in design, manufacture, marketing and sale, failure to warn, misbranding/mislabeling and fraud/misrepresentation(s) of material fact(s) concerning the complained-of products. In holding that the state law tort causes of action in each of these cases were pre-empted by the preceding statute, the courts in each of those cases held that a state tort cause of action will be pre-empted if, in the context of the particular case, it (1) constitutes a requirement different from, or in addition to, any requirement the MDA makes applicable to the device at issue and (2) relates either to (a) the safety or effectiveness of the device or (b) any other matter included in a requirement made applicable to the MDA. *See, e.g.: Stamps,* at 1421, 1423–1424; *King,* at 1134, *Slater,* at 1334, *Michael,* at 3. In this way, the scope of pre-emption is limited to efforts by states to impose (under either common or statutory law) sanctions for compliance with federal regulations relating to safety or efficacy of the product in question. It does not affect cases charging negligence in the implantation or removal of a particular device, or complaining of contamination by bacteria or fungi or failure to obtain the patient's informed consent to the procedure. *Slater,* at 1334 (citations omitted). *See Also: Cameron v. Howmedica Division of Pfizer Hospital Products Group, Inc.,* 820 F.Supp. 317 (E.D.Mich.1993); *Covey v. Surgidev Corp., supra.*

Applying the foregoing principles to the matter now before us, it is noteworthy that the plaintiff's complaint here asserts common law claims for medical malpractice, failure to obtain informed consent, civil conspiracy and negligence by failure to properly diagnose and treat her condition. Although Plaintiff has included allegations concerning the propriety of the use of the Acromed VSP pedical screw system in her spinal fusion surgery, nowhere are there any allegations *challenging* the federal requirements, testing, regulations, etc. governing the said pedical screw fixation system by the Medical Device Amendments or the FDC Act. Rather, the gravamen of the complaint in this case is the plaintiff's alleged misdiagnosis and the fact that she was purportedly not informed by the defendant doctors of their financial interest in the Acromed device or their intention to use the Acromed device in the performance of the surgery upon her. This court therefore finds no merit whatsoever to the moving defendant's argument that the plaintiff's common law claims are pre-empted by the federal Medical Device Amendments and his motion to dismiss on this basis is denied.

#### C. *Sufficiency of Plaintiff's Complaint to State a Claim for Civil Conspiracy.*

■ Defendant additionally avers that the plaintiff's complaint does not contain the requisite allegations needed to state a claim upon which relief can be granted for civil conspiracy under the law of the Commonwealth of Pennsylvania.[2] We agree.

■ It is axiomatic that to state a cause of action for the tort of civil conspiracy in Penn-

---

**2.** Although Dr. Davne's original motion to dismiss also sought dismissal of Ms. Corrigan's request for punitive damages, it appears from both the said defendant's Response to Plaintiff's Response to Defendant's Motion to Dismiss and his Response to Plaintiff's Motion for Sanctions Pursuant to Rule 11, that that part of the original motion which dealt with punitive damages has been withdrawn and it is for that reason that we shall not address it in this Memorandum and Order. Additionally, inasmuch as this court is unable to find that plaintiff ever filed a motion for Rule 11 sanctions, we see no reason to address the arguments raised in defendant Davne's response thereto either.

sylvania, the plaintiff must plead and prove that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466 (1979); *Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 505 A.2d 973 (1985); *Slaybaugh v. Newman,* 330 Pa.Super. 216, 479 A.2d 517 (1984). Proof of malice, *i.e.,* intent to injure, is an essential part of a conspiracy cause of action and this unlawful intent must also be without justification. *Rutherfoord v. Presbyterian–University Hospital,* 417 Pa.Super. 316, 612 A.2d 500 (1992). In addition, an overt act must be performed in furtherance of the conspiracy and actual legal damages must result. *Gilbert v. Feld,* 788 F.Supp. 854 (E.D.Pa.1992); *Smith v. Wagner,* 403 Pa.Super. 316, 588 A.2d 1308 (1991).

In this case, Count VII of the plaintiff's complaint avers that all three of the defendants conspired or agreed to circumvent FDA restrictions on the marketing, labelling and use of the Acromed VSP system by virtue of their training and performance of spinal fusion procedures on patients such as the plaintiff, that they did so with the intention of realizing increased revenues and to gather data for a private study on the Acromed system and that as a result of this conspiracy, the plaintiff suffered unnecessary pain, surgery and a prolonged admission to the defendant hospital. Without passing on the lawfulness or possible unlawfulness of the defendants' alleged acts and even accepting all of these averments as true and giving the plaintiff the benefit of every possible inference, we are unable to accept her argument that the malice element can and should be inferred. Indeed, it is equally possible that the defendants recommended and performed the surgery with only the best interests of the plaintiffs and other and future patients in mind. The mere fact that the defendants derive a financial benefit from treating patients and performing surgery does not lead us to impute malice to these defendants. To be sure, physicians and surgeons, like any professional or service provider, are entitled to be compensated for their efforts on behalf of their patients. So saying, the moving defendant's motion shall be granted in part

and denied in part in accordance with the attached order.