Howard, Trustee, *v.* Flanigan (et al., Appellant).

Argued January 13, 1936.   Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*E. A. Howell,* with him *Lloyd Goman,* for appellant.

*C. Brewster Rhoads,* with him *J. H. Ward Hinkson,* for appellee.

OPINION BY MR. JUSTICE MAXEY, March 23, 1936:

Daniel Flanigan and Catherine Flanigan are husband and wife. At the time the present proceedings were instituted Flanigan was about 76 years of age and his wife is described in the record as "but little younger." How long they have been married does not appear, but it is in evidence that during the preceding twenty-five years Flanigan and his wife had been separated most of the time. On one occasion she left him and went to Norristown, where she resided for eighteen years. When an action in divorce was instituted against her in 1923 for desertion, she returned to Flanigan's habitation. In April, 1934, there was an altercation between Flanigan and Mrs. Flanigan's forty-two-year-old son. She then left defendant and has not returned since.

On November 2, 1934, Flanigan executed a judgment note in the sum of $3,000 to Gertrude Howard, Trustee. Judgment was entered on this note a day later. Mrs. Flanigan filed a petition to open this judgment, averring "that Flanigan had no reason for borrowing so large a sum of money and no use for the said sum of money as a loan, and if such consideration was paid, it was not paid in good faith." It was further alleged that the "petitioner has reason to believe that the persons for whom the Trustee, Gertrude Howard, was acting, have either conspired with the said Daniel Flanigan to pay him an amount in addition to the sum of $3,000 alleged to have been loaned him by them, after title shall have been obtained; or that they are, with intent to defraud, attempting and conspiring among themselves to obtain the

said property at far less than its fair market value, and have by means of their agents, representatives and employees taken unfair advantage of the defendant, Daniel Flanigan, and by reason of his weakness and their knowledge of the impossibility of his repaying any part of the said debt, obtained the advantage with the intent to defraud him of a large portion of the value of his property and your petitioner of her inchoate dower rights therein, or that the said note was given with the express purpose of defrauding your petitioner of her inchoate dower rights in the above described property." It was further alleged that Flanigan has a large portion of the amount of money alleged to have been loaned him on his property in a banking institution and has refused to pay out of these funds any portion of the interest or principal of the loan. It was further alleged that the real estate has a present market value of $6,000. Petitioner prayed for leave to intervene as an additional party defendant and for a rule to show cause why the judgment should not be opened and petitioner let in with her defense. The rule was granted and later discharged by the court below.

The court below in its opinion correctly summarizes the evidence in this case substantially as follows: That several years ago the defendant had another property which he sold, the proceeds from which he used for living expenses, and that for many years prior to the transaction complained of in this case he was out of work, he had no money left and was in debt. He applied to Attorney J. H. Ward Hinkson for a loan on the Flanigan residence and the attorney informed him that he probably would not be able to get a loan as he had no means of repayment. Defendant then suggested to the attorney that the latter see Simon H. Adelman, a real estate agent. This was done, and Adelman consulted with officers of the Stauffer Chemical Company whose land Flanigan's property adjoined. Adelman had tried several years previously to sell this property to the company for

$6,500. Mrs. Flanigan had then refused to join in the sale. Adelman saw the officers of the company in New York and finally secured the loan. He stipulated that he should get $500 for his services. Flanigan signed a written agreement to vacate the property at the expiration of six months, being the due date of the note, if he did not repay the loan by that time. The money was sent by the Chemical Company to the Delaware County Trust Company for settlement. This company made searches and paid the arrearages of taxes and the commissions, and paid the balance of $2,471.12 to Flanigan. The latter paid his bills, bought himself some clothing, bought a burial lot and paid a funeral director sufficient for his future burial, and at the time of the hearing he had a balance of $1,200. The Chemical Company did not like to appear as a lender of money and it was arranged that Attorney Hinkson's secretary, Gertrude Howard, as Trustee, should be the payee of the note. After default, the Chemical Company requested Adelman to suggest the name of an attorney to issue execution on the judgment. Attorney Hinkson's name was suggested. He was then engaged by the company. Attorney Hinkson having previously represented Flanigan, secured, before accepting the Chemical Company as a client, the consent of Flanigan.

The court below found that when the Chemical Company lent the money to Flanigan, "it had no knowledge of any intent on the part of Flanigan to cut his wife out of her inchoate rights in the property." The court further said : "Flanigan had expended for his and his wife's living, so long as they lived together, the proceeds of the sale of other property he owned, and that he had no money for his support at the time he was forced to make this loan. The loan was not made by him for the purpose of defeating his wife's inchoate rights in the property but because he needed the money upon which to live." We see no reason to disturb the findings and conclusions of the court below.

In the Appeal of Jenkintown N. Bank, 124 Pa. 337, 17 A. 2, this court said: "Prior to the Act of April 4, 1877, P. L. 53, the opening of a judgment rested in the discretion of the court below, and no appeal was allowed to this court. It by no means follows, however, that the discretion formerly vested in the common pleas in regard to opening judgments, has been taken away by the Act of 1877. Upon appeal to this court, we only decide whether the discretion has been rightly exercised." In Earley's App., 90 Pa. 321, this court said, in a case based upon a rule to open judgment: "It is a mistake to suppose that the court cannot judge of the weight of the evidence, and the credibility of witnesses, but must in every case, where there is a conflict of testimony, send the case to a jury. In equity cases these questions may be determined by the chancellor, and on appeal his decision is reviewed. We are to determine in all such appeals whether the discretion of the court below has been rightly exercised." In the recent case of Mielcuszny v. Rosol, 317 Pa. 91, 176 A. 236, this court again reiterated that on an appeal from a refusal to open a judgment, this court determines only whether discretion has been abused.

The court below found, and the evidence warranted it, that there was no conspiracy between the Chemical Company and Flanigan to cheat the latter's wife out of her inchoate rights in the property.

This court in Beirne v. Continental-Equitable Title & Trust Co., 307 Pa. 570, 161 A. 721, reiterated the principle that "if one has the legal right to do a particular thing, the law will not inquire into his motive for doing it." That case also held in effect that in an action like the present one it is necessary for the wife to prove actual fraud. "Fraud," this court in that case said, "is the vital factor, and if actual fraud upon the other spouse is shown to have been the real cause of the transfer of the assets, the general rule is applied, as in other cases of actual fraud, and the conveyance is held void."

In that opinion the following is quoted from Hummel's Est., 161 Pa. 215, 217, 28 A. 1113: The husband "may give away or squander his property and thus reduce himself and wife to poverty, according to the authorities; but no case has gone so far as to sustain a voluntary obligation given and received with intent to defraud the wife's rights." That opinion also quotes the following from Young's Est., 202 Pa. 431, 441, 51 A. 1036: "But the fraudulent intent is the indispensable foundation for any such limitation of his control."

In the case before us there was a total want of evidence showing any fraud on the part of defendant or on the part of anyone else related to this transaction. There is nothing here to cast any shadow of unethicality on the professional conduct of Attorney Hinkson or in any degree to subject him to just reproach. It is clear from the evidence that defendant received a generous loan on this property, to wit, $3,000. In the years in which the real estate market was active this property was appraised at about $6,000. The loan, therefore, was under prevailing circumstances a fair one. The proceeds of this loan were used by Flanigan in a proper manner. The balance which he had on hand after paying his debts and making arrangements for his burial is now his sole means of support. The right of Flanigan to secure a loan on this property for the purposes for which it was secured is unassailable. If Mrs. Flanigan should return to his habitation, she, as well as he, would be supported by the balance of the proceeds from the sale of this property.

Appellant argues in substance that a judgment like the one now under review should be opened unless there was a good and valid consideration for it and also entire good faith on the part of the plaintiff or on the part of those whom the plaintiff represents. Appellant further says that "if either one of those facts were lacking, the judgment should be opened." (Citing Hummel's Est., 161 Pa. 215, 28 A. 1113; Brinks v. Heise, 84 Pa. 246, and Waterhouse v. Waterhouse, 206 Pa. 433, 55 A. 1067.)

As to Hummel's Est., supra, an examination of it reveals that the facts were entirely different from the facts in the instant case. In that case there was presented no question as to the opening of a judgment. The controversy was on the distribution of the assets of decedent's estate and the ruling of this court was that the widow should be given preference in distribution over the heirs of the deceased husband, who, as the auditor found, had given certain notes to deprive his widow of her just share of the estate.

Brinks v. Heise, supra, involved the question of the existence of a fraudulent combination for the purpose of defrauding creditors. This question was referred to a jury and this court refused to disturb the jury's findings.

In Waterhouse v. Waterhouse, supra, strongly relied upon by petitioner, it was alleged that the judgment in question was given without consideration by a husband and fraudulently in collusion with his brother for the purpose of depriving his wife of her dower. In that case the court below discharged the rule to open the judgment, but filed no opinion. The case was appealed to this court and Mr. Justice DEAN, speaking for this court, said: This court was "left to practically pass upon the evidence as if this were a first hearing of it." The court further said that the husband had threatened "that he would get rid of all his property and leave the state," and that he would confess a large judgment to his brother. This court said: "The undisputed facts thus far raise at least a grave suspicion of a collusion to deprive her of her lawful right of dower. . . . Under these facts, the burden was on the plaintiff to establish by the preponderance of testimony, that the judgment was honestly confessed for a bona fide debt due him from the defendant." In the case at bar, the fact is indisputable that the judgment was confessed for a bona fide loan of $3,000. In the Waterhouse case there were allegations supported by evidence that the judgment was fraudulently given without consideration. Here consid-

eration is abundantly proved and there is no evidence of any fraud. In the Waterhouse case this court held that the testimony was not free from contradiction and the matter was a question for the jury.

The transaction in the instant case amounts merely to this: Flanigan who owned only a single piece of property decided to turn it into cash so that he might support himself in his declining years. For a loan which he had no intention or means of repaying he gave a note containing a confession of judgment, understanding fully that for this loan his property would ultimately be the "quid pro quo." This was his method of liquidation so that he could live in comfort during the remainder of his life. The fact that he did not choose to deny himself so that his wife might live in comfort after his death, is evidence that his affection for her did not rise to that degree which inspires such commendable self-sacrifice.

If plaintiff's entire estate had consisted of personal property of the "1929 value" of $6,000 instead of real estate of the "1929 value" of $6,000, and if he had an opportunity to sell that personal property for $3,000, his right to do so would be undoubted and he could use the money received from the sale as he saw fit. In the instant case he could not sell his real estate without his wife joining in the deed, but he had a right to borrow money and to execute and deliver as security therefor, a judgment note in the appropriate amount. In choosing to execute a judgment note for $3,000 as security for the loan, on which judgment was entered, thereby creating a lien against his property which finally divested him of its ownership, he resorted to a lawful method to accomplish a lawful end. Neither his object nor his means were tainted with illegality. There was no evidence of fraud or collusion between himself and the money lender or any other party to this transaction. What he did with the proceeds was his own affair.

The order of the court below is affirmed.