479 A.2d 517

Richard A. SLAYBAUGH and Jean T. Slaybaugh, Husband and Wife, and Steven A. Slaybaugh and Judy L. Slaybaugh, Husband and Wife, and Mt. Ridge Farms, Inc., Appellants,

v.

James NEWMAN, Individually, Boyd Sieg, Individually, Al Flickinger, Individually, Shirley Nace, Individually, Joseph A. Myers, Individually, and Joseph A. Myers Real Estate, Inc.

Superior Court of Pennsylvania.

Argued Nov. 3, 1983.

Filed June 8, 1984.

Kenneth Lee Rotz, Gettysburg, for appellants.

Daniel M. Frey, Hanover, for appellees.

Before WICKERSHAM, WIEAND and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from the sustaining of a demurrer to plaintiffs' complaint in trespass. Plaintiffs, appellants herein, are purchasers of real estate and defendants are five real estate salespersons and their employing agency. Appellants sued them for fraud and conspiracy arising out of their purchase of a certain tract of land in Adams County. The parties were before this Court once before when the trial court, pursuant to preliminary objections by appellees, dismissed the amended complaint for having been filed two days late. We reversed and remanded because we found no prejudice to the defendants because of the late filing.[1] On remand, the court dismissed the complaint for failure to state a claim upon which relief could be granted.

1. *Slaybaugh v. Newman,* 295 Pa.Superior Ct. 222, 441 A.2d 429 (1982).

The question here is whether a cause of action for fraud and civil conspiracy will lie against real estate salespersons and brokers who by withholding a particular piece of information, induced a purchaser of land to buy more land than he originally intended, resulting in an additional real estate commission.

Appellants were interested in purchasing farms numbered 2 and 3 of three contiguous tracts being farms numbered 1, 2, and 3, (hereafter nos. 1, 2 and 3) owned by persons named Carey, who are not parties to this suit. Each appellee is alleged to have represented to appellants that because the vendors did not want to be "stuck" with no. 1, it must be sold with nos. 2 and 3 as a unit. Because appellants were desirous of acquiring nos. 2 and 3, and only because of appellees' representations, appellants reluctantly purchased no. 1 also. Subsequently, appellants learned that a third party, the Lobaughs, had made an offer to purchase no. 1, which offer was pending at the time of the negotiations between the parties regarding nos. 2 and 3. Newman, an appellee, then offered to act as listing agent in selling the unwanted no. 1 to the Lobaughs, who were assisted by appellee Flickinger.[2] Appellants demand damages in excess of $10,000, plus punitive and exemplary damages for appellants' losses allegedly incurred by having been induced to purchase no. 1. Appellants' theory of the case is that this transaction was part of a conspiracy by appellees to cheat and defraud appellants out of their property and out of an additional sales commission for the sale of no. 1. Appellants contend that the offer by Lobaughs to purchase no. 1 was deliberately withheld from the owners the Careys, who paid a commission to appellees when appellants purchased all three farms; then, Newman "helped" appellants sell the unwanted farm to a purchaser whom he had "waiting in the

2. Appellee Sieg is sued as part of the alleged conspiracy to cheat and defraud appellants in his capacity as salesperson for the Cunninghams, who also entered into Articles of Agreement with appellants for the purchase of farm no. 1. Shirley Nace, another salesperson is named as participating in the same alleged scheme.

wings." The amended complaint alleges that what New-man told appellants about the terms of sale which the Careys demanded was false, and that Newman knew or should have known that the Careys were interested or were willing to sell the three farms in separate transactions, as long as they were not "stuck" with no. 1.

The facts and all reasonable inferences therefrom have been admitted by appellees' demurrer. *Gekas v. Shapp*, 469 Pa. 1, 5, 364 A.2d 691, 693 (1976); *Buchanan v. Brentwood Federal Savings and Loan Association*, 457 Pa. 135, 139, 320 A.2d 117, 120 (1974). In determining whether they are sufficient to state a cause of action, we are guided by the rule that a demurrer may be sustained only in clear cases, and all doubts must be resolved in favor of the sufficiency of the complaint. *Martin v. Little, Brown and Company*, 304 Pa.Superior Ct. 424, 428–9, 450 A.2d 984, 987 (1981). A demurrer will be sustained only where a plaintiff's complaint or pleading shows with certainty that upon the facts averred therein, the law will not permit the plaintiff to recover. *Matschener v. City of Pittsburgh*, 36 Pa.Cmwlth. 69, 387 A.2d 954 (1978).

The lower court dismissed appellants' complaint for failure to state a claim upon which relief may be granted because it reasoned that appellees were pursuing a legitimate business right, and cannot be found to have engaged in fraud, citing *Howard v. Flanigan*, 320 Pa. 569, 573, 184 A. 34, (1936). (We assume the legitimate business right to which the court referred was the procurement of real estate commissions.) As for the allegation of conspiracy, the court relied on *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979), for the proposition that (1) proof of malice, intent to injure, is essential in proof of civil conspiracy, and that (2) unlawful intent must be without legal justification. In both torts, the court reasoned that because appellees were seeking only a commission incident to their position in the real estate business, the law would permit a recovery neither for fraud nor conspiracy. We agree with the court's order insofar as the conspiracy counts are concerned; however, with regard to the fraud

counts, we are constrained to reverse and to grant appellants their day in court.

■ For a cause of action in civil conspiracy to succeed, it must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979).

■ Applying this definition to the instant facts in the complaint, appellants have not shown in what way the appellees acted in concert. Appellants have failed to allege in what way the appellees combined or agreed, with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. Appellants allege in their lengthy complaint the same behavior, of misrepresentation of the Carey's terms as to farm no. 1, as exhibited by each and every appellee. However, appellants fail to establish how each individual allegation of fraud was part of a combination or agreement. In the case of *Commonwealth v. Musser Forests, Inc.*, 394 Pa. 205, 146 A.2d 714 (1958) averments that defendants' actions regarding land specified for the planting of seedlings and the one report they made jointly to the Commonwealth concerning asserted disposition of the seedlings, supported a reasonable inference that the defendants acted in concert with the common purpose of defrauding the Commonwealth for their personal gain. Such an inference is absent in this case. Thus, the order sustaining the demurrer as to civil conspiracy is affirmed.

On the other hand, the averments of the complaint as to fraud do set forth a cause of action and appellants should be given an opportunity to substantiate them.

The essential elements of a cause of action for fraud are (1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker that the recipient will thereby be induced to act; (4) justifiable reliance by the recipient on the misrepresentation; and (5) damage to the recipient as the proximate result. (citations omitted.) *Scaife Co. v. Rockwell-Standard Corp.*, 446 Pa. 280, 285, 285 A.2d 451, 454 (1971).

Each salesperson is alleged to have represented to appellants that it was necessary for them to purchase all three farms as a unit, when according to appellants, the truth was that it made no difference to the Careys how the farms were sold, as long as they were not "stuck" with no. 1. And, in fact, the salespersons knew of persons who were offering to purchase the unwanted tract alone, which would have satisfied the Careys. Appellees counter that a person cannot be held liable for fraud if he or she is lawfully pursuing a legitimate business interest, citing *Howard v. Flanagan*, 320 Pa. 569, 184 A. 34 (1936). Additionally, appellees contend that it must follow that it was not a misrepresentation by appellees to inform appellants that in order to purchase nos. 2 and 3, they would have to purchase all of the farms being sold by Careys despite the fact appellants were not offering to buy no. 1 separately. Appellees also argue that because the nature of the instrument involving farm no. 1 was an offer to purchase it, rather than an executed agreement of sale, that it is a plausible inference that the Careys rejected the Lobaugh's offer in their desire to sell all three farms as a unit. The trial court also relied on this allegation to find that there was no prior agreement to sell no. 1.

In *O'Callaghan v. Weitzman*, 291 Pa.Superior Ct. 471, 436 A.2d 212 (1981), the court described as "well-settled" the principle that "the deliberate nondisclosure of a material fact amounts to a culpable misrepresentation no less than does an intentional affirmation of a material falsity." *Id.*, 291 Pa.Superior Ct. at 475, 436 A.2d at 214. The salespersons in the instant case are alleged to have kept from appellants a piece of information which they possessed by reason of their positions. Furthermore, appellants allege appellees knew that appellants were including no. 1 in their transaction only in order to acquire the other two tracts on the basis of appellees alleged representation that appellants had to buy all three parcels. We are not persuaded by the appellees' reasoning that their behavior cannot be considered a misrepresentation since appellants were not offering to buy no. 1 separately. The fact that the

Lobaugh's offer to purchase farm no. 1 had not evolved into a sales agreement and the inferences to be drawn thereby, should be reserved for consideration at trial. Appellants have the burden of producing substantiating evidence to prove the fact that there were buyers for farm no. 1 who were known to appellees, but whom appellees refused to disclose. If the Careys rejected the Lobaugh's offer, then appellees will properly present this fact as a defense in their responsive pleadings. But such an inference is not for our speculation at this point.

■ Moreover, we cannot agree that if a legitimate business interest is being pursued, that a person so acting cannot be liable for fraud. Such a blanket justification for any and all means to achieve business advances which are one's legitimate interest seems to us to ignore the equally legitimate interest of the party with whom one is doing business. Additionally, the elements of fraud admit of no such justification. In fact, the trend appears still to be in the opposite direction, as in the well-known deterioration of the harsh maxim *caveat emptor.*

Our Commonwealth Court acknowledged this trend toward a more flexible, less formalistic duty to disclose in the context of an appeal from the revocation of real estate brokers' licenses by the State Real Estate Commission in *Matter of Real Estate License No. R.B. –001518–A,* 47 Pa.Cmwlth. 236, 241, 407 A.2d 922 (1979). In that case, evidence established that a real estate salesman was informed by the seller of property that it had been vandalized; yet, the salesman only called his broker, taking no steps to inform the buyers who had negotiated a sales agreement prior to the vandalism. After the closing, the buyers took possession and discovered the damages themselves. While the Commonwealth Court refused to affirm the Commission's finding that the petitioners had a misrepresentation, and this only because the sales agreement did not appear of record thereby precluding the Court from determining the element of inducement, the Court did state

We do not mean to suggest, however, that real estate brokers and salesmen owe no duty of candor towards

buyers and other third parties outside of the normal seller/broker relationship. On the contrary, real estate brokers and salesmen may be held accountable in damages by third party purchasers for misrepresentation including the failure to disclose material information. *See Shane v. Hoffmann,* 227 Pa.Superior Ct. 176, 324 A.2d 532 (1974); *cf. Young v. Dept. of Public Instruction,* 105 Pa.Superior Ct. 153, 157, 160 A. 151, 153 (1932) (under the Act [Real Estate Brokers License Act of 1929, *as amended,* 63 P.S. § 431, *et seq.*), a broker's responsibility "for knowingly making any substantial misrepresentation is the same whether they be made to his principal or to any other person, if they are made in an attempt to effect a purchase or sale of real estate for another person."

The Court also, in dictum, made note of § 551 of the Restatement (Second) of Torts (1977) as applicable to that case. It says that a party to a business transaction has a duty to disclose

facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the others, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of these facts. Restatement (Second) of Torts (1977) § 551(2)(e).

We feel that Comment 1 expresses adequately why the instant action in fraud should proceed.

The continuing development of modern business ethics has, however, limited to some extent this privilege to take advantage of ignorance. There are situations in which the defendant not only knows that his bargaining adversary is acting under a mistake basic to the transaction, but also knows that his adversary, by reason of the relations between them, the customs of the trade, or other objective circumstances, is reasonably relying upon a disclosure of the unrevealed fact if it exists. In this type of case good faith and fair dealing may require a disclosure.

■ The complaint sets forth that appellants did not want farm no. 1. They incurred added expense because they purchased it. They purchased it, according to the complaint only because they were induced by appellees' representation that the Careys would sell the three farms only as a unit. Appellants contend that this statement was made only to generate an additional sales commission, and that buyers were available who would have purchased farm no. 1 directly from the Careys. Appellants finally allege that the arrangement, contrary to appellees' representation, would have been acceptable to the Careys since, then they would not have been "stuck" with farm no. 1. We find that these factual allegations make out a case of fraud.

Therefore, order of the lower court sustaining appellees' demurrer is affirmed as to the civil conspiracy counts and reversed as to the fraud counts. Case remanded for further proceedings. Jurisdiction relinquished.

WICKERSHAM, J., filed a dissenting statement.

WICKERSHAM, Judge, dissenting:

I would affirm on the opinion of President Judge Keith B. Quigley.[1]

**1.** Nothing can be created out of nothing. [Lucretius: *De rerum natura I*]