**Lawrence P. SIMMS, Plaintiff**

v.

**EXETER ARCHITECTURAL PRODUCTS, INC., Charles D. Flack, Jr., and Harold E. Flack, II, Defendants.**

**No. 3:CV 93–0792.**

United States District Court,
M.D. Pennsylvania.

April 11, 1994.

---

Thomas I. Vanaskie, G.F. Blake, Elliott, Vanaskie & Riley, Matthew A. Cartwright, Munley, Mattise, Kelly & Cartwright, Scranton, PA, for Lawrence P. Simms.

Joseph T. Wright, Jr., McDonnell, O'Brien, & Wright, Scranton, PA, Thomas F. Ford, Rosenn Jenkins & Greenwald, Wilkes–Barre, PA, for Exeter Architectural Products, Inc.

Joseph D. Mancano, Philadelphia, PA, Richard S. Margulies, Britt, Hankins, Schaible & Moughan, Philadelphia, PA, for Charles D. Flack, Jr., Harold E. Flack, II.

John R. Lenahan, Jr., Lenahan & Dempsey, Scranton, PA, for Mediator.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

Plaintiff Lawrence P. Simms initiated this diversity based action on May 26, 1993, against Defendants Exeter Architectural Products Inc., Charles D. Flack, Jr. and Harold E. Flack, II. The Plaintiff seeks both equitable and legal relief from Defendants' illegal and oppressive corporate conduct. (Doc. No. 1, p. 14). Presently before the Court is a motion by Defendants Charles D. Flack, Jr. and Harold E. Flack, II, to dismiss Counts I, II and III of Plaintiff's complaint. Also before the Court is Defendant Exeter's Motion to Dismiss the Complaint.

### BACKGROUND

Defendant Exeter Architectural Products, Inc. (hereinafter Exeter) manufactures and distributes a patented window barrier, of which perforated steel is a major component. Plaintiff Simms is a founding shareholder and a director of Exeter and served as Exeter's President from the time of its creation until he was terminated in October, 1992. Defendant Charles D. Flack, Jr. is a founding shareholder of Exeter along with his brother Harold E. Flack, II. The two served as Exeter's Chairman of the Board and Vice President respectively. Both were also founding Shareholders of Exeter. (Doc. No. 3, p. 1).

In 1989, Simms, Charles Flack and Harold Flack, as the founders of Exeter, had each initially purchased and controlled an equal amount of shares of common stock. In December, 1990, the three founders, Simms, C. Flack and H. Flack, each loaned Exeter the sum of $80,000. On July 30, 1991, the Board of Directors, also comprised of Simms, C. Flack and H. Flack, approved an amendment to the Articles of Incorporation of Exeter which increased the authorized shares of common stock to 2,000,000 shares. The three shareholders simultaneously converted their $80,000 loans to investments in Exeter

for which each was issued an additional 399,-990 shares. The relevance is that each continued to own equally one-third of the outstanding stock of this closely held corporation. (Doc. No. 4, p. 2).

In September 1991, Simms, Charles Flack and Harold Flack entered into a Shareholders Agreement. (Doc. No. 4, Exh. "A"). According to this agreement, if any of the founding shareholders were terminated in 1992, with or without cause, the remaining founding shareholders and/or the Exeter corporation were entitled to purchase the terminated shareholder's shares at a fixed price of $1.10 per share. In October 1991, Exeter made available preferred stock with a par value of $100 per share. Purchasers of this preferred stock were entitled to receive cash dividends. Once a holder of preferred stock, shareholder had the option to convert his stock into common stock at a conversion rate of 17.15 shares common stock for each share of preferred stock. (Doc. No. 4, p. 3).

In March 1992, the parties agreed to a thirty percent (30%) salary reduction for three months for Simms, Charles Flack and Harold Flack. The Plaintiff Simms has alleged that at the end of this salary reduction period, the Flacks began to implement a plan to eliminate his rights and economic interests as a one-third owner of Exeter. Plaintiff contends that in July 1992, the Flacks indefinitely extended the 30% salary reduction over his protest. The Plaintiff further alleges that in September 1992, without proper notice of any corporate meeting and in violation of the Exeter By–Laws, the Flacks converted Exeter's debt of $330,000 to Diamond Manufacturing, which the Flacks owned, from non-interest bearing to interest bearing at a rate of 2 points above the prime rate.

The Plaintiff avers that the defendants conspired to misrepresent to him the date of a Board of Directors meeting to assure that he was not in attendance and that once absent from that meeting the Flacks falsely represented that Simms demanded control of Exeter due to differences in management philosophies. The minutes of the meeting have allegedly preserved these assertions. It was at this September Board of Directors meeting that Charles Flack and Harold Flack acted to approve the replacement of Simms as President. The Plaintiff contends that upon his termination, despite the provisions in the Shareholders Agreement, Charles and Harold Flack conspired and combined to offer to purchase Simms' shares at only $.20 per share, well below the $1.10 per share figure set forth in the Shareholders Agreement.

## LEGAL STANDARD

In deciding a motion to dismiss, all material allegations must be accepted as true and construed in a light most favorable to the non-moving party. *Truhe v. Rapell,* 641 F.Supp. 57 (M.D.Pa.1985) A complaint may be dismissed only if it appears that the plaintiff cannot approve any set of facts in support of his claim that would entitle him to relief. *Id.* The Court must view all allegations made in the complaint, as well as all inferences reasonably drawn therefrom, in favor of the plaintiff. *Sturm v. Clark,* 835 F.2d 1009 (3d Cir.1987). Because a motion to dismiss results in a determination on the merits at the earliest stage of the proceedings, the Court is obligated to construe the plaintiff's complaint liberally in favor of the plaintiff. *Pittsburgh National Bank v. Welton Becket Associates,* 601 F.Supp. 887 (W.D.Pa.1985). A complaint should never be dismissed for failure to state a claim unless the court is convinced beyond doubt that the plaintiff can prove no set of facts to support a claim which would permit a recovery. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Hooten v. Pennsylvania College of Optometry,* 601 F.Supp. 1151 (E.D.Pa.1984).

## DISCUSSION

I. *Motion to Dismiss Counts I, II and III of Plaintiff's Complaint*

Defendants aver that Plaintiff Simms has failed to present a legally cognizable claim against Charles and Harold Flack in Counts I, II and III. We will address counts II and III only as Count I has been rendered moot by our previous decision regarding Plaintiff's request for equitable relief from Exeter Architectural, Inc. in the form of a receiver pendente lite.

Specifically, Defendants contend that Plaintiff cannot assert a claim for breach of fiduciary duty in a private action against Defendants. The crux of this argument is that a shareholder cannot maintain a private action against directors of a corporation when the injury has been suffered by the corporation rather than by the shareholder individually. They assert that only a derivative action may be maintained when Plaintiff has suffered no direct injury.

A shareholder may however, bring an action against a corporation and others when the injury is one to the plaintiff as a shareholder in his individual capacity, and not to the corporation. *Fishkin v. Hi–Acres, Inc.,* 462 Pa. 309, 341, 341 A.2d 95 (1975). The Defendants contention is based on the supposition that Simms has suffered no direct injury. Plaintiff's Complaint however, sets forth in detail the concerted efforts of the Flacks to harm him financially, to prevent and inhibit Plaintiff's ability to sell or transfer his stock, to relegate his share holdings to practically worthless stock, to oust Plaintiff from the presidential office, to interfere with the U.S. Postal Service, and to eliminate Plaintiff's access to corporate records. We believe Simms has sufficiently demonstrated how he has been injured in his individual capacity as an employee, shareholder, director and investor in the closely held corporation Exeter Architectural Products, Inc. With regard to his assertions that the Defendants are in engaged in a full blown scheme to squeeze him out, we must afford him the benefit of the doubt. As we have stated, we must liberally construe Plaintiff Simms' allegations and all inferences drawn therefrom. This Middle District has held, in the not so distant past, that it is permissible for a shareholder to assert, in his own right, a cause of action against a corporation and majority shareholder. In *Willis v. Dillsburg Grain & Milling Co.,* 490 F.Supp. 46 (M.D.Pa.1980), the Court held that such an action for relief from oppressive corporate conduct directed specifically towards Plaintiff was not only permissible but sufficient to survive summary judgment. In that case, the wronged minority shareholder set forth four counts in his complaint. The second count, dealing with the production of corporate books, need not be discussed here for in the present case, we have already addressed that issue in an earlier opinion. However, the remaining counts have direct bearing on the matter before us. In count I of the *Willis* complaint, the plaintiff alleged that the defendant engaged in "a course of conduct calculated to oppress and harass the plaintiff and to render his shares in stock in the defendant corporation worthless ..." 490 F.Supp. at 48.

In count IV, the plaintiff alleged that "the defendants have taken on a course of conduct to squeeze out the plaintiff from all participation in the defendant corporation, have denied the plaintiff a fair return on his investment and therefore have breached fiduciary duties owed the plaintiff." Id. at 50. As to both of these counts, the court denied defendant's motion for summary judgment, thereby recognizing plaintiff's standing and the adequacy of his claims.

Count III of the complaint alleged that defendant, as majority shareholder and director of the defendant corporation owed fiduciary duties to the plaintiff, as minority shareholder, which included the duty to act fairly toward the plaintiff and to provide the plaintiff with a fair return on his investment. To substantiate his allegations, the plaintiff proffered seven specific instances in which the defendant allegedly breached these fiduciary duties to the plaintiff. The court however, stated that "[t]hese alleged acts would properly be raised in a derivative action by the plaintiff, brought on behalf of the defendant corporation, but not in a private action by the plaintiff." Id. 490 F.Supp. at 49. The court dismissed count III for lack of standing.

In the present case, Plaintiff Simms has proffered specific acts indicative of abuse of discretion among majority shareholders in a closely held corporation sufficient to give rise to an inference of personal injury. We must accept as true plaintiff's assertions and in doing so must recognize that, if true, there is enough information to support a claim which would permit recovery.

Although Plaintiff Simms improperly characterizes his own Count II as a breach of

fiduciary duty owed to a minority shareholder, almost to his detriment, the substance of his claim adequately depicts Plaintiff's injuries in an individual capacity. It is clear that Plaintiff cannot simply aver that injury to the corporation is injury to him by virtue of his shareholder status. However, it is equally clear that not every shareholder is an officer or employee of the corporation in which they own stock. It is also eminently clear that while some shareholders receive a return on their investment purely from the increased value of their shares, others recoup their original investment and return on their investment in the form of salaries and benefits.[1] When Plaintiff Simms claims that he was terminated, restricted from access to records, and prevented from selling shares at their true value, he is alleging violations endured by himself in his individual capacity. That capacity takes him out the realm of the derivative action shareholder who claims that the corporation has suffered injury. The situation here is quite the opposite. The undeniable underlying theme to the whole Simms–Exeter–Flack relationship, as per the Buy–Sell Agreement, is that both the remaining shareholders and the defendant corporation will benefit from the actions taken against Simms. Because it appears that Plaintiff Simms rather than Exeter corporation is injured, we will deny Defendants' Motion to Dismiss Count II of Plaintiff's Complaint.

 With regard to Count III of Plaintiff Simms' complaint, the Defendants maintain that there was no such conspiracy and that given the relationship of the parties, a conspiracy is a legal impossibility. Specifically, Defendants aver that the Messrs. Flack are agents of the Exeter corporation and that agents of a single corporation cannot be found to have conspired among themselves.

 The Pennsylvania Superior Court, however, has recognized that a conspiracy may occur within a single entity. *Gordon v. Lancaster Osteopathic Hospital,* 340 Pa.Super. 253, 267, 489 A.2d 1364 (1985). For a cause of action in civil conspiracy to succeed, "it must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." *Rumbaugh v. Beck,* 411 Pa.Super. 220, 233, 601 A.2d 319 (1991); *Slaybaugh v. Newman,* 330 Pa.Super. 216, 221, 479 A.2d 517 (1984); *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 211, 412 A.2d 466 (1979). Absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act. *Pelagatti v. Cohen,* 370 Pa.Super. 422, 433, 536 A.2d 1337 (1987). Our inquiries, at this juncture, are quite simple. First, has the Plaintiff identified two potential conspirators? Second, is there an underlying cause of action that can give rise to a cause of action for civil conspiracy? We hold that both of the aforementioned questions are answered in the affirmative.

Plaintiff Simms has alleged that Charles Flack and Harold Flack, the majority shareholders of the closely held Exeter corporation, eagerly sought the personal financial benefits that would result from the removal of Plaintiff's shareholder interests. Plaintiff has averred that Defendants Charles Flack and Harold Flack conspired to breach fiduciary obligations owed to Plaintiff, to terminate Plaintiff's employment, to restrict Plaintiff's access to books and records of Exeter, and to interfere with Plaintiff's efforts to sell, transfer, or otherwise convey his shares of Exeter stock. The breach of fiduciary duties

---

1. As a leading commentator in the field has observed: "Unlike the typical shareholder in the publicly held corporation, who may be simply an investor or a speculator and cares nothing for the responsibilities of management, the shareholder in a close corporation is a co-owner of the business and wants the privileges and powers that go with ownership. His participation in that particular corporation is often his principal or sole source of income. As a matter of fact, providing employment for himself may have been the principal reason why he participated in organizing the corporation. He may or may not anticipate an ultimate profit from the sale of his interest, but he normally draws very little from the corporation as dividends. In his capacity as an officer or employee of the corporation, he looks to his salary for the principal return on his capital investment, because earnings of a close corporation, as is well known, are distributed in major part in salaries, bonuses and retirement benefits." (O'Neal, Close Corporations [2d ed.], § 1.07, at pp. 21–22 [n. omitted].)

claim in Count II of Plaintiff's Complaint is a sufficient basis for recovery and is therefore an act or acts that can be accomplished by and through a conspiracy.

■ In response to Defendants' contention that Plaintiff Simms has not pleaded the necessary element of damages for civil conspiracy, we note that Simms specifically averred that he "demands judgment in his favor and against Defendants Charles Flack and Harold Flack due to their conspiratorial conduct in an amount in excess of $50,000.00 . . ." (Doc. No. 1, p. 18). Although Plaintiff Simms has not stated with particularity how he arrives at this monetary figure, he does adequately describe circumstances that create an inference of a strategic scheme to remove him from Exeter Architectural and at an amount significantly less than previously agreed upon. At this motion to dismiss stage, we believe that "fair notice" of the nature of Plaintiff's claims "is all that is required in light of the applicable pleading and discovery rules, which are liberal in nature." *Lessard v. Jersey Shore State Bank*, 702 F.Supp. 96, 100 (M.D.Pa.1988) (citing *In re Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 398 (E.D.Pa.1981)).

This Court is required to accept as true all well-pleaded facts in the complaint, as well as all inferences reasonably deducible therefrom. We are to determine whether sufficient facts have been pled which would permit recovery if ultimately proven. On the record before us, we find that Plaintiff Simms has adduced sufficient evidence to withstand a motion to dismiss.

We believe that it is premature at this point to hold that no relief could be granted under any set of facts that could be proved consistent with the breach of fiduciary duties and civil conspiracy allegations. Accordingly, Defendants' Motion to Dismiss Count III of Plaintiff's complaint will be denied.

II. *Defendant Exeter's Motion to Dismiss*

■ A. Defendant Exeter contends that Section 1793 of the B.C.L. (15 Pa.C.S.A. § 1793), which provides for review of corporate action, is limited in application. We agree. The only relief available under § 1793 is the reviewing court's grant of a mandatory corporate meeting where there has been inappropriate corporate action. Application of section 1793 would require this Court to make a determination as to the validity of acts taken at three separate Exeter director meetings. We note that such a determination, at this stage in the proceedings, would be inappropriate. But a determination as to the validity of corporate actions need not be addressed on a motion to dismiss. Our inquiry is simply whether there has been enough facts set forth that, if taken as true, would establish corporate wrongdoing and permit some form of recovery.

Plaintiff Simms seeks a declaration that the actions taken by the directors at Exeter's September 24 and December 28 Board of Directors meetings are invalid. Such declaration would be a condition precedent to the directive of a mandatory corporate meeting. At present, we are not inclined to make such a declaration. However, we will not foreclose the opportunity to further offer evidence on the matter as Plaintiff has presented allegations sufficient to give rise to a colorable claim of corporate impropriety. We will therefore refrain from granting Exeter's Motion to Dismiss Count VII of Plaintiff's complaint.

■ B. Simms maintains that Exeter implicitly threatened to enforce the non-competition clause of the Shareholders Agreement against him and that "Attorney Rosenthal claimed that Plaintiff breached the clause." (Doc. No. 1, p. 27 & Doc. No. 38, p. 30). This, Plaintiff avers, constitutes an actual controversy between the parties and thereby justifies his request for a declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202. In response, Defendant Exeter asserts that interpretation of the non-competition clause of the Shareholders Agreement, when there is no allegation that Simms acted in contravention to that clause, amounts to an advisory opinion prohibited by Article III of our Constitution.

The Declaratory Judgment Act provides in relevant part that:

In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon filing of an appropriate plead-

ing, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

The use of the permissive "may" in § 2201 has been interpreted as a grant of discretion to the district court, *Bituminous Coal Operators' Assoc. Inc. v. Int'l Union, UMW*, 585 F.2d 586, 596 (3rd Cir.1978), and the Third Circuit has previously held that the Declaratory Judgment Act "should have a liberal interpretation." *Exxon Corp. v. Federal Trade Commission*, 588 F.2d 895, 900 (3rd Cir.1978). *See U.S. v. Com. of PA., Dept. of Envir. Resources*, 923 F.2d 1071, 1074 (3rd Cir.1991). We therefore note our statutory discretion to decide whether to entertain this action for declaratory judgment contained in Count VIII of Plaintiff's Complaint. *Terra Nova Ins. Co. Ltd. v. 900 Bar, Inc.*, 887 F.2d 1213, 1222 (3rd Cir.1989); *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1170 (3rd Cir.1987).

Plaintiff argues that the threat of a future lawsuit is enough to satisfy the "actual case or controversy" requirement of section 2201. Although the threat of legal action may present a real controversy, *Simmonds Aerocessories v. Elastic Stop Nut Corp.*, 257 F.2d 485 (3rd Cir.1958), in the case before us, the threat of suit is far too attenuated. Moreover, Plaintiff Simms has not demonstrated that he has been or is about to be injured as a result of the challenged non-competition clause.

First, the letter in which Plaintiff refers to in paragraphs 106 and 107 of his complaint is the letter of October 15, 1992, terminating his employment. (Doc. No. 1, Exh. "B"). Contained therein and presented in a rather secular manner is the following paragraph:

We take this opportunity to remind you of your covenant against competition during the time that you hold any stock of the Company and for a period of two (2) years thereafter.

Doc. No. 1, Exh. "B" ¶ 4.

We do not feel that this general reminder of Plaintiff's contractual obligation alone constitutes the actual controversy or immediate threat of injury necessary to substantiate a request for declaratory judgement. When taken in light of the fact that Plaintiff Simms did not plead a precise set of factual circumstances within which to examine his contractual rights, the absence of actual controversy and injury compels us to hold that declaratory relief is not warranted.

Plaintiff Simms is asking this Court to interpret the non-competition clause without finding the necessary facts. For example, Plaintiff has not conceded he has taken actions in contravention to the non-competition clause (i.e. obtained work with a corporation in direct competition with Defendant corporation Exeter or at least within the same industry). He has not alleged that as a result of newly obtained employment he has been subjected to a lawsuit or the possibility of a lawsuit in the very near future. Rather, Plaintiff asks us to construe a contract provision and determine his future rights based on a pre-supposed hypothetical.[2]

Interpreting the non-competition clause of the Shareholders Agreement, thereby casting the contractual rights of the parties in stone, "without finding the necessary facts constitutes advisory opinion writing, and that is constitutionally forbidden." *Step–Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643, 649 (3rd Cir.1990).

It is tempting to pass judgment on the substantive issue of the non-competition clause, however, at this time, we will exercise our discretion not to declare the legal rights between the parties. Accordingly, we will grant Defendant Exeter's Motion to Dismiss Count VIII of Plaintiff's Complaint. We note, however, that this does not preclude a future determination as to the validity of the non-competition clause in the event there

---

**2.** Plaintiff Simms relies on the supposition that when he attempts to gain employment in the industry, he will immediately face a lawsuit thereby making his relationship with Exeter an adverse one and one that indeed cries injury.

evolves an actual controversy or an actual injury is sustained.

C. Defendant Exeter insists that Counts IV, V, and VI[3] of Plaintiff's Complaint be dismissed for failure to state a claim to recover the amount not tendered under the voluntary pay cut. In March, 1992, in response to defendant corporation's previous quarterly performance, Simms and the Messrs. Flack agreed to salary reductions. Plaintiff Simms agreed to a thirty-five percent (35%) salary reduction which he claims was for a fixed period of time.[4] It is Exeter's position that the salary reduction was purely voluntary and that Simms accepted, without objection, the reduced compensation "for months and first raised this claim one year after he was supposedly underpaid." (Doc. No. 13, p. 35). Defendant Exeter corporation asserts that such conduct estops Simms from claiming that he was underpaid.

It is obvious that the controversy is centered around whether there was an express agreement regarding the 35% salary reduction and its duration. First, we would be remiss in our analysis if we did not acknowledge 43 P.S. § 260.9a—Civil remedies and penalties as the applicable statute of limitation. Under that provision, no legal action shall be instituted for the collection of unpaid wages "more than three years after the day on which such wages were due and payable ...." 43 P.S. § 260.9a(g). Plaintiff Simms properly raised this claim in a timely fashion as it was presented in his original complaint filed May 26, 1993, certainly within the prescribed time frame.

■■ Secondly, whether there was an agreement between the parties is an inherent conflict that has been recognized by both parties and sufficiently pleaded by Plaintiff Simms. We have reviewed Plaintiff's Complaint and in particular the allegations set forth in Counts IV and V. The complaint sets forth a course of conduct allegedly engaged in by defendants. It tells of the nature of the claim, the time frame of the actions taken that gave rise to the claim and the theory of law the Plaintiff is proceeding under. The complaint gives Defendant Exeter fair notice of the nature of the claims alleged against it and is sufficient whether or not the circumstances surrounding the alleged agreement are stated with particularity. At this time, an account in detail is not required in light of the applicable pleading and discovery rules. Accordingly, Defendant's Motion to Dismiss Counts IV and V is denied.

■■ D. Finally, Defendant Exeter contends Count VI of Plaintiff's Complaint, a claim for unjust enrichment, must be dismissed for failure to state a claim. Exeter's position is that Plaintiff's right to recovery is premised on an express agreement and must necessarily fail under well established Pennsylvania case law. Exeter relies specifically on *Roman Mosaic and Tile Co. v. Vollrath*, 226 Pa.Super. 215, 313 A.2d 305 (1973). In that case, the Superior Court stated, inter alia, that "[t]he doctrine of unjust enrichment is clearly inapplicable when the relationship between the parties is founded on a written agreement or express contract." *Id.* at 217, 313 A.2d 305. The fatal flaw in Defendant's argument however, is that Defendant's have ardently maintained that Plaintiff Simms voluntarily took a pay cut and that because there was no contract or agreement, there was certainly no provision as to the duration of Plaintiff's reduced salary. To preclude Plaintiff's unjust enrichment claim and any possible recovery is to allow Defendant to argue that there was no such contract in one breath, and then that there was in another. In good conscience, we cannot allow such legal fiction.

---

3. Count IV of Plaintiff's Complaint—Violation of the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1 et seq., Count V—Breach of Contract, and Count VI—Unjust enrichment.

4. Plaintiff Simms maintains that under their agreement, if no affirmative steps were taken [by the three founding shareholders] to continue the salary reduction, the reduction would expire in sixty (60) days. Simms further avers that "despite the expiration of the sixty day period, Defendants Charles Flack and Harold Flack conspired and agreed to maintain the 35% salary reduction beyond the sixty day period without any affirmative vote or resolution by the Board of Directors and/or the shareholders." (Doc. No. 1, p. 20, ¶¶ 78–84).

**686**

The question before us is whether it can be said without doubt that Plaintiff could not establish a basis for recovery. If Plaintiff fails to establish a contract between himself and Exeter essential to warrant recovery on a breach of contract theory, he may be able to show that Exeter, by and through its agents, wrongfully secured or passively received a benefit that it would be unconscionable for it to retain. *In re Brereton's Estate*, 388 Pa. 206, 212, 130 A.2d 453 (1957). It follows that we cannot say Plaintiff will be unable to recover on the facts alleged.

Accordingly, we will deny Defendant's Motion to Dismiss Count VI of Plaintiff's Complaint. In doing so, we do not signify the ultimate outcome with regard to the validity of Plaintiff's claim. We hold only that Plaintiff has stated a cause of action in quasi-contract sufficiently well to withstand a motion to dismiss.

*CONCLUSION*

On the record before us, we find that Plaintiff Simms has adduced sufficient information to support a claim which, if taken as true, would permit recovery. This, taken with the fact that he was injured in an individual capacity, supports a denial of Defendants' (Messrs. Flack) Motion to Dismiss Count II of Plaintiff's Complaint. Plaintiff has also described circumstances that create an inference of a plan or scheme to remove him entirely from the corporation. We will therefore deny Defendants' Motion to Dismiss Count III of Plaintiff's Complaint.

In addition, we will deny Defendant Exeter's Motion to Dismiss Count VII of Plaintiff's Complaint as there appears to be a colorable claim of corporate impropriety. With regard to the absence of actual controversy or some form of injury, either actual or threatened, we hold that declaratory relief is not warranted and accordingly will grant Defendant Exeter's Motion to Dismiss Count VIII without prejudice.

As to counts IV and V, violation of the Pennsylvania Wage Payment Law and Breach of Contract, Plaintiff has given Defendant Exeter fair notice of the claims against it and has provided minimal but adequate allegations. Therefore, with both counts, the Defendant's Motion to Dismiss is denied. Finally, because we cannot say with certainty that Plaintiff will be unable to recover on a theory of unjust enrichment, we must deny Defendant's Motion to Dismiss Count VI of Plaintiff's Complaint. An appropriate Order is attached.