**Ducas v. Pinecrest Dev. Corp.**

C.P. of Monroe County, no. 7014 CIVIL 2010.

*John P. Rodgers*, for plaintiffs.
*Marshall E. Anders*, for defendant.

SIBUM, *J.*, October 27, 2010—Plaintiffs Michael Ducas ("Ducas"), Wild Pines Enterprises, LLC. ("WPE"), and Wild Pines Management, Inc. ("WPM") (collectively "plaintiffs") commenced this action against defendant Pinecrest Development Corporation ("PDC") for breach of contract, or in the alternative, unjust enrichment. Plaintiffs filed a four count amended complaint on September 4, 2009 arguing two counts of breach of contract and two counts of unjust enrichment. PDC then filed preliminary objections to plaintiffs' amended complaint raising one motion to transfer for improper venue and five motions to dismiss for legal insufficiency of a pleading (demurrer). This case was argued before the Court of common pleas of Lackawanna County and subsequently transferred to Monroe County, now rendering PDC's preliminary objection to venue moot. Both parties have submitted briefs and oral arguments were heard before this court on September 7, 2010 as to PDC's remaining preliminary objections. We are now prepared to decide this matter.

## DISCUSSION

Preliminary objections may be filed by any party to any pleading on several grounds, including legal insufficiency of a pleading (demurrer). Pa.R.C.P. §1028(a)(4). In ruling on preliminary objections, we recognize that the court must accept as true "all well-pleaded allegations and material facts averred in the complaint, as well as all reasonable inferences deducible therefrom...." *Wurth by Wurth v. City of Philadelphia*, 584 A.2d 403, 407(Pa. Cmwlth. 1990). The court need not accept as true, however, "conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Myers v. Ridge*, 712 A.2d 791, 794 (Pa. Cmwlth. 1998). When ruling on a preliminary objection that would dismiss the action, we are mindful to sustain the objection only in the cases which are clear and free from doubt. *King v. Detroit Tool Co.*, 682 A.2d 313, 314 (Pa. Super. 1996).

Reviewing the facts of record in the light most favorable to plaintiffs, the non-moving party, the record reveals the following. Defendant PDC is a Pennsylvania corporation and the developer of the Pinecrest Lake Development located in Pocono Pines, Monroe County, Pennsylvania. amended complaint, ¶5.[1] Edward P. Carroll ("Carroll") is the president and sole voting stock holder of PDC. *Id.* at 6, 7. In the summer of 2003, Carroll approached plaintiff Ducas and began discussions regarding the sale of PDC to Ducas. *Id.* at 8. On February 5, 2004, Carroll and Ducas entered into a contract of sale whereby Ducas was to purchase all of the outstanding shares of voting

---

1. Reference to plaintiffs' amended complaint will be cited as [AC, ¶---.]

and non-voting stock of PDC in exchange for payment of $1,500,000.00 and the assumption of certain liabilities. *Id.* at 9.

On October 1, 2004, Carroll and Ducas entered into a revised contract of sale whereby Ducas was to purchase all of the outstanding shares of voting and non-voting stock of PDC in exchange for payment of $3,958,000.00. *Id.* at 10. Pursuant to the agreements of sale, Ducas paid to PDC deposits totaling $404,180.00 as contingent down payments for the purchase of PDC. *Id.* at 11. At the special request and insistence of Carroll in his official capacity as president of PDC, Ducas wrote five checks payable to Carroll and one check payable to Titan Custom Homes, Inc. *Id.* at 12.

The five checks written to Carroll were inscribed in the "for" line of the check as "1st Installment -- purchase PDC" or as "6/30 Dep" and were intended as contingent down payments for the purchase of PDC. AC, ¶11(a)-(e); Exhibit C. The check written to Titan Custom Homes was inscribed "EPC Deposit." *Id.* Paragraph 11(e) of plaintiffs' amended complaint provides that the check was for the purchase of property from Titan Homes by Carroll and was to be considered as the fifth contingent down payment for the purchase of PDC. AC, ¶11(e). One check dated October 1, 2004 was specifically endorsed "pay to the order of Pinecrest Dev. Corp." *Id.* at 11(f), Exhibit C. Plaintiffs aver that all checks made payable to Carroll were deposited into bank accounts which were in the name of the defendant, PDC. *Id.* at 14.

Between May 1, 2003 and September 6, 2005, at the

request of Carroll in his official capacity as president of PDC, Ducas loaned to PDC for its benefit a total of $411,394.63. *Id.* at 15, 18, Exhibit D. Carroll stated these loans were to be used for the payment of PDC's operational expenses and to pay entities which directly benefited PDC. *Id.* at 15; Exhibit D.

On December 22, 2005, plaintiffs Ducas, WPE and WPM entered into an agreement of sale with PDC whereby PDC was to purchase plaintiffs' golf course operations in exchange for $12,000,000.00. *Id.* at 19. Pursuant to this agreement of sale, WPM and WPE were to enter into a long term lease with PDC whereby all plaintiffs were to turn over management of the golf course to PDC and sign a document that forgives all loans made to PDC by plaintiffs, in exchange for the payment of a minimum of $12,000,000.00. *Id.* at 20.

After signing the agreement of sale on December 22, 2005, PDC took over management of the golf course pursuant to an oral lease agreement. *Id.* at 44. Pursuant to the oral agreement, PDC agreed to pay the property taxes for the golf course. *Id.* at 45.

On March 31, 2008, plaintiffs and PDC agreed to terminate the December 22, 2005 agreement pursuant to a written termination agreement ("termination agreement"). *Id.* at 21, Exhibit F. Pursuant to paragraph 4 of the termination agreement, PDC reaffirmed the obligation to repay the plaintiffs for monies owed. *Id.* at 22. However, despite agreeing to repay the plaintiffs, PDC has failed to make payment. *Id.* at 29. In addition, after the signing of the termination agreement, Ducas learned from

the Monroe County Tax Claim Bureau that PDC failed to pay the real estate taxes on the golf course in the amount of $129,463.00. As a result, on April 1, 2008, Ducas made the real estate tax payment to the Bureau. *Id.* at 46.

### 1. *Demurrers to Count 1 - Breach of Contract*

PDC first argues in its demurrer to count I (breach of contract) of the amended complaint that, because PDC was not a party to the contract of sale and revised contract of sale for the sale of PDC's stock, the plaintiffs cannot set forth a cause of action against PDC for monies owed. We disagree.

A demurrer tests the legal sufficiency of the pleading. In determining whether the factual averments of a complaint are sufficient to state a cause of action, all doubts must be resolved in favor of the sufficiency of the complaint. *Slaybaugh v. Newman*, 479 A.2d 517, 519 (Pa. Super. 1984). A demurrer will be sustained only where the complaint demonstrates with certainty that under the facts averred within, the law will not permit a recovery. *Id.*; *see also Cianfrani v. Commonwealth, State Employees' Retirement Bd.*, 505 Pa. 294, 297, 479 A.2d 468, 469 (Pa. 1984). If any theory of law will support the claim raised by the complaint, dismissal is improper. *Slaybaugh*, supra; *Cianfrani*, supra.

Here, the critical fact is that PDC was a party to the termination agreement. In the termination agreement, PDC agreed to repay Ducas any and all monies owed by PDC to Ducas, the amount which was yet to be determined.

The termination agreement acknowledges that plaintiffs made loans to PDC. The termination agreement

specifically provides:

> Notwithstanding anything in this agreement to the contrary set forth herein, this termination shall not relieve buyer's obligation to repay Michael J. Ducas monies owed to Michael J. Ducas by PDC.

It is PDC's failure to repay this debt as required by the termination agreement that constitutes a cause of action. Plaintiff's amended complaint states a claim for which relief can be granted due to the fact that the termination agreement specifically provides for PDC to reimburse Ducas for monies owed to Ducas by PDC.

In addition, the December 22, 2005 agreement of sale for the golf course contemplates plaintiffs forgiving all loans made to PDC. Additionally, plaintiff's amended complaint alleges that all payments, which total $404,180.00, were made on behalf of PDC at the request of Carroll for the benefit of PDC. Pursuant to the allegations in plaintiff's amended complaint, no payments were made to Carroll in his individual capacity. The monies were either paid to Carroll on behalf of PDC as payment for the promissory notes PDC owed to Carroll or were issued in order to benefit PDC. The termination agreement, moreover, specifically provides that PDC shall be responsible for repayment of any monies it owes to Ducas.

As such, we find the parties intended for PDC to repay the deposits to plaintiff Ducas. Plaintiffs' amended complaint states a valid claim for which relief can be granted. PDC's preliminary objection will be denied.

PDC also demurs to count I (breach of contract) that the amended complaint fails to set forth the specific terms of the loan agreement and therefore, fails to allege any

cause of action for a breach of a loan agreement or loan contract. Again, we disagree.

In order for a valid, enforceable contract to exist, there must be an offer, acceptance, consideration or mutual meeting of the minds. *Jenkins v. County of Schuylkill*, 658 A.2d 380, 383 (Pa. Super. 1995). In Pennsylvania, parties may bind themselves orally even when contemplating a later written contract. *Kistler, Inc. v. O'Brien*, 464 Pa. 475, 493, 347 A.2d 311, 315 (Pa. 1975).

Here, we find that plaintiff's amended complaint sets forth an offer, acceptance, and valuable consideration. We also find that plaintiff's amended complaint demonstrates a mutual meeting of the minds. Twenty-three checks totaling $411,394.63 were issued by plaintiffs on behalf and for the benefit of PDC. Such checks are evidence of the mutual understanding between the parties involved and consideration for the loan. The references to the loan in the December 22, 2005 golf course agreement of sale and to the repayment of same in the termination agreement are further evidence of the loan's existence. A demurrer will be sustained only where the complaint demonstrates with certainty that under the facts averred within, the law will not permit a recovery. *Slaybaugh*, supra.; *see also Cianfrani*, supra. PDC's preliminary objection will be denied.

### 2. *Demurrers to Count II -- Unjust Enrichment*

In the alternative to breach of contract, plaintiffs are suing PDC for unjust enrichment. PDC argues in its demurrers to count II (unjust enrichment) that contract payments were made payable directly to Carroll or other third parties and not PDC and therefore, PDC could not be unjustly enriched by the checks. As such, defendant asserts

that the amended complaint fails to set forth a cause of action for unjust enrichment against PDC. We disagree.

Where there is no expressed contract between the parties, the plaintiff can still recover under, quasi-contract. "Unjust enrichment is an equitable doctrine." *Styer v. Jugo,* 619 A.2d 347, 350 (Pa. Super. 1993). "Where unjust enrichment is found, the law implies a contract, referred to as a quasi contract or a contract implied at law, which requires that the defendant pay to plaintiff the value of the benefit conferred." *Schenck v. K.E. David, Ltd.,* 666 A.2d 327, 328-29 (Pa. Super. 1995). The three elements necessary to prove unjust enrichment are: 1) benefits conferred on the defendant by the plaintiff; 2) appreciation of such benefits by the defendant; and 3) acceptance and retention of such benefits under such circumstances that it would be inequitable for the defendant to retain the benefit without the payment of value. *Mitchell v. Moore,* 729 A.2d 1200, 1203 (Pa. Super. 1999). Unjust enrichment will only lie where the transaction between the parties is not otherwise governed by an express contract. *Villoresi v. Femminella,* 856 A.2d 78, 84 (Pa. Super. 2004).

For the reasons stated above, we find that plaintiffs' amended complaint sets forth facts evidencing that twenty-three checks totaling $411,394.63 were issued by plaintiffs on behalf and for the benefit of PDC. As further stated above, we find that plaintiffs' amended complaint sets forth facts evidencing how PDC was benefitted by the issuance of the checks and how PDC reaffirmed its obligation to repay monies owed by it to Ducas. This repayment has not occurred and is the reason for the instant action. As such we find that plaintiff has alleged a valid cause of action for unjust enrichment. PDC's preliminary objection will be denied.

### 3. *Legal Insufficiency of a Pleading (Demurrer) -- Breach of Contract: Count III*

PDC finally argues in its demurrer to count III (breach of contract) that they did not have a contractual obligation to pay the real estate taxes and although the agreement of sale contemplates the parties entering into a written lease, they did not. As such, PDC argues that the plaintiffs' amended complaint fails to set forth a cause of action for breach of the lease. We disagree.

The parties formally entered into an agreement of sale on December 22, 2005 by executing the document with the intent to memorialize an oral agreement between plaintiffs and PDC. The document, attached to plaintiffs' amended complaint states that:

> At the execution of this agreement the seller will sign a long term lease with the buyer which turns over all golf course operations of WPM and WPE and in turn, seller will sign a document that forgives all loans made to buyer (to be determined) in exchange for a minimum future obligation in the amount of $12.0 million (including debt payoff) plus additional contingent funds which will be paid as indicated below.

Although the parties did not enter into a written lease, the amended complaint provides that the parties entered into an oral lease and the plaintiff took control of the golf course operations.

Accepting as true all well-pleaded allegations and material facts averred in the amended complaint, plaintiffs have sufficiently averred that PDC took over management of the golf course pursuant to the oral lease agreement which required PDC to pay all property taxes. The

amended complaint further avers that PDC agreed to pay all the property taxes yet failed to do so.

The plaintiffs also specifically allege that after signing the termination agreement, plaintiff Ducas learned from the Monroe County Tax Claim Bureau that PDC failed to pay real estate taxes in the amount of $129,463.00. Accepting these averments as true, as we must, plaintiffs' amended complaint sets forth a claim for breach of contract for which relief can be granted as a result of PDC's failure to pay the property taxes. PDC's preliminary objection will be denied.

Accordingly, we enter the following order.

## ORDER

And now, October 27, 2010, upon consideration of defendant's preliminary objections to plaintiffs' amended complaint, it is ordered as follows:

1. Defendant's preliminary objection to improper venue is dismissed as moot.

2. Defendant's preliminary objections in the nature of demurrers as to count I, breach of contract, are denied.

3. Defendant's preliminary objections in the nature of demurrers as to count II, unjust enrichment, are denied.

4. Defendant's preliminary objection as to count III, breach of contract, is denied.

5. Defendant is hereby given 20 days in which to file an answer to plaintiffs' amended complaint.